UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOE E. LEE,<br><br>                    Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                    Defendant. | NO.  C11-1995-JCC-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Joe E. Lee appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

I.      FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a 41-year-old man with a high school education.  Administrative Record ("AR") at 30.  Plaintiff has also completed college courses at Langston University in Oklahoma, received a certificate in welding through Job Corps, and completed some child development courses at Renton Technical College.  AR at

REPORT AND RECOMMENDATION - 1

30. His past work experience includes employment as a warehouse worker and supervisor, an assistant manager at a day care, and a preschool attendant. AR at 31-35. Plaintiff was last gainfully employed in 2008. AR at 31.

On July 14, 2008, plaintiff filed a claim for SSI payments and filed an application for DIB, alleging an onset date of January 10, 2011. AR at 36, 121-126. Plaintiff asserts that he is disabled due to a back injury. AR at 181.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 65-74. Plaintiff requested a hearing which took place on January 12, 2010. AR at 11. On April 15, 2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 11-18. After reviewing additional evidence, the Appeals Council denied Plaintiff's request for review, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On December 2, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Lee bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age,

REPORT AND RECOMMENDATION - 3

education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On April 15, 2010, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.

2. The claimant has not engaged in substantial gainful activity since January 10, 2008, the alleged onset date.

3. The claimant has the following severe impairments: right leg deep vein thrombosis and lumbar spine disease.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to six hours in an eight hour workday, and sit up to six hours in an eight hour workday. The claimant can frequently climb ramps and stairs, and balance, and occasionally climb ladders, ropes, and scaffolds, stoop, crouch, crawl, and kneel. The claimant should avoid concentrated exposure to vibration and hazards such as machinery and heights.

6. The claimant is capable of performing past relevant work as a warehouse supervisor and preschool attendant as those jobs are customarily performed in the national economy. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

REPORT AND RECOMMENDATION - 5

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 10, 2008, through the date of this decision.

AR at 13-18.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err by finding that plaintiff could perform his past relevant work as a warehouse supervisor or preschool attendant as generally performed?

2. Did the ALJ err in evaluating the opinions of treating physician Dr. James?

3. Do the opinions of treating physician Dr. Yang, which were submitted to the Appeals Council following the ALJ's decision, show that substantial evidence does not support the ALJ's decision?

4. Did the ALJ err in assessing plaintiff's credibility?

5. Did the ALJ err in evaluating the lay witness testimony?

Dkt. 16 at 1-2; Dkt. 19 at 2.

## VII. DISCUSSION

A. <u>The ALJ Erred by Finding Plaintiff Could Perform his Past Relevant Work</u>

1. *Legal Standard at Step Four*

At step four, the plaintiff has the burden of showing that he is no longer able to perform his past relevant work. *Lewis v. Barnhart,* 281 F.3d 1081, 1083 (9th Cir. 2002) (citing *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001)). The step four determination involves a comparison between the demands of the claimant's former work and his present capacity. *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). A plaintiff cannot merely show that he is incapable of performing the particular job he once performed; he must prove that he cannot return to the same type of work. *Id.* at 798. If plaintiff is unable meet his burden, that burden remains with him rather than shifting to Secretary to proceed with step five. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

A person is not disabled if they are able to perform their past work. 20 C.F.R. § 404.1502(f). Social Security Ruling ("SSR") 82–61 describes the tests for determining whether or not a claimant retains the capacity to perform her past relevant work.[2] One of the tests identifies that "where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'" SSR 82–61. Another test is "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." *Id.*

The *Dictionary of Occupation Titles* (*"DOT"*) is the "best source for how a job is generally performed." *Pinto*, 249 F.3d at 845. In classifying prior work, the agency must keep in mind that every occupation involves various tasks that may require differing levels of physical exertion. It is error for the ALJ to classify an occupation "according to the least demanding function." *Valenica v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985). *DOT* descriptions "can be relied upon—for jobs that are listed in the *DOT*—to define the job as it is *usually* performed in the national economy." SSR 82–61 (emphasis in original). Thus, "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id*.

A claimant's properly completed vocational report (SSA-3369-F6) may be sufficient to furnish information about their past work. *Id.* However, when significant variation exists

---

[2] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001). Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

REPORT AND RECOMMENDATION - 7

between a claimant's description of his job and the *DOT* description of his job, it may be the result of composite job. *Id.* A composite job has "significant elements of two or more occupations, and as such, ha[s] no counterpart in the *DOT.*" *Id.* Composite jobs are evaluated "according to the particular facts of each individual case." *Id.*

      2.  *Warehouse Supervisor Job*

In plaintiff's vocational report, he labeled the position he held from August 1989 until November 1999 as "warehouse supervisor," although he described the position as involving substantial manual labor in addition to his obligation to supervise ten to eleven other workers. AR at 196, 200. Specifically, plaintiff listed his duties as operating a "fork lift, computers, daily delivery & work week, supervise workers, move furniture, load and unload trucks." AR at 200. He asserted that he was considered a "lead worker," and was occasionally required to lift and carry furniture and household items that weighed 100 lbs. or more, and frequently lift items that weighed 50 lbs. or more. AR at 200. He estimated that his supervisory duties took approximately one-half of his day, or four out of eight working hours, but noted that they did not involve hiring or firing employees. AR at 200. Similarly, during the administrative hearing, plaintiff described the supervisory aspects of his job as "mak[ing] sure the inventory that we would get in was inspected and tagged for the customer. Also put up . . . into the different bins and shelves. Make sure that the delivery schedule was done every day." AR at 35. Although the owner managed all the hiring and firing, plaintiff stated that he sometimes would "recommend certain people because of lack of job performance." AR at 35.

During the hearing, in describing "the work [plaintiff] did in Texas that he describes as a warehouse supervisor," the VE testified that plaintiff's

> description comes pretty close to the DOT description, with the
> exception of the hiring and firing that he didn't do. So a
> warehouse supervisor has the DOT code of 222.137-034. The

REPORT AND RECOMMENDATION - 8

> SVP: 6, and *unless you're a working supervisor it's light work.*
> *But if you're expected to work, and I gathered from his testimony*
> *that he also was working, I'd say then it's at least medium work,*
> *like a warehouse worker would be.*

AR at 54 (emphasis added).  Thus, the VE conceded that as actually performed by the plaintiff, plaintiff's former job was at least a medium-duty position.  Nevertheless, the VE classified the position as falling under *DOT* No. 222.127-034, which is a purely supervisory position that requires only light work.  *See DOT* 222.137-034, available at 1991 WL 672071 (describing the job as involving supervising and coordinating the activities of other workers, and requiring an ability to exert "up to 20 pounds of force occasionally . . . and/or up to 10 pounds of force frequently.").  Based on this classification, the VE testified that plaintiff could perform this position as it is normally performed in the national economy.  AR at 54-55.  Specifically, the VE testified that "as it's normally performed, you're not a working supervisor.  And so that being light work I think you could, and you're not really expected to be operating machinery and dealing with the postural limitations of the hypothetical.  So I think that one, as it's normally performed, is possible."  AR at 54-55.  Based on the VE's testimony, the ALJ concluded at step four that plaintiff was capable of performing his past relevant work as a warehouse supervisor as this job is customarily performed in the national economy.  AR at 17.

Plaintiff "agrees with the ALJ that he could not perform his past relevant work as a 'warehouse supervisor' as actually performed," because the job required at least medium-level work and the ALJ found plaintiff limited to light work.  *See* Dkt. 16 at 9 (citing AR at 14, 200).  However, plaintiff argues that because his former warehouse supervisor position involved substantial manual labor in addition to his supervisory duties, it constituted a "composite job." *See id.*  Plaintiff asserts that under SSR 82-61, "when a claimant's past relevant work is a composite of two or more separate occupations, a claimant does not have past relevant work as

REPORT AND RECOMMENDATION - 9

generally performed." *Id.* (citing Program Operations Manual ("POMS") § DI 25005.020(B) ("When comparing the claimant's RFC to a composite job as it was performed, find the claimant capable of performing the composite job only if he or she can perform all parts of the job. A composite job will not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'")). Thus, plaintiff asserts that substantial evidence does not support the ALJ's decision at step four.

Plaintiff cites two Ninth Circuit decisions to support his argument that his former warehouse supervisor position constituted a "composite job." *See* Dkt. 16 at 10 (citing *Valenica v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985), and *Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2007)). In *Valencia*, the claimant worked for eight years as a kitchen helper and two years as an agricultural worker. 751 F.2d at 1086. Both occupations required significant manual labor including lifting heavy machinery and farm field work, classified as medium work. *Id.* However, part of her job as an agricultural worker was sorting tomatoes, which was light work. The ALJ denied the claimant's disability claim on the grounds that she could perform light work. The Ninth Circuit reversed the decision, holding that a job could not be classified by its least demanding function. *See id.* at 1086.

Similarly, the claimant in *Carmickle* was a carpenter whose job involved remodeling houses as well as supervising a crew of other carpenters. 533 F.3d at 1166. The claimant stated that his supervisory duties comprised twenty percent of his time, and the remaining eighty percent was dedicated to manual labor. *Id.* The ALJ classified the claimant with a position in the *DOT* that was purely supervisory and required no manual labor. The Ninth Circuit disagreed with the categorization, and held that the ALJ had improperly focused on the supervisory aspect of the job, rather than on the job as actually performed by the claimant, which also required substantial manual labor. *See id*. at 1167.

REPORT AND RECOMMENDATION - 10

Plaintiff contends that, like the construction worker in *Carmickle*, when he worked as a warehouse supervisor only part of his duties "involved supervision. The remainder of his time involved performing manual labor. Yet the VE's classification, which the ALJ accepted, was a purely supervisory position." *Carmickle*, 533 F.3d at 1166. Plaintiff states that he spent approximately half of his time supervising other workers, and spent the other half driving a forklift, moving heavy furniture, and loading and unloading trucks. AR at 200. Plaintiff also points to the VE's testimony that "if you're expected to work, and I gathered from [plaintiff's] testimony that he also was working, I'd say then it's at least medium work, like a warehouse worker would be." AR at 54. Based on the VE's testimony, as well as the Ninth Circuit's decisions in *Valencia* and *Carmickle*, plaintiff contends that he had composite work under *DOT* Nos. 222.137 (Warehouse Supervisor) and 922.687-058 (Warehouse Worker). *See* Dkt. 16 at 11. As a result, plaintiff argues that "he did not have past relevant work as generally performed as a warehouse supervisor corresponding to the 'light' DOT occupation of 222.137-034," and the ALJ erred by relying upon this job at step four. *See id.*

The Commissioner argues that plaintiff's job as a warehouse supervisor can be distinguished from the claimants in *Valencia* and *Carmickle*, because "in *Carmickle*, the plaintiff spent approximately 20% of his time supervising three employees, and 80% of his time performing medium-duty carpentry work . . . By contrast, here Plaintiff performed supervisory functions of 5-11 employees half of the time he worked." Dkt. 19 at 12 (citing AR at 200). Similarly, the Commissioner contends that *Valencia* stands for the proposition that "the performance of a particular light task did not alter the oval exertional categorization of the job. Here, however, Plaintiff did not simply perform one task at a light exertional level, but performed supervisory duties half of the time." *Id.* at 13.

REPORT AND RECOMMENDATION - 11

The Commissioner's argument that an ALJ may ignore half of the claimant's duties when categorizing his past relevant work at step four is unpersuasive. As the Ninth Circuit held in *Carmickle* and *Valencia*, "it is error for the ALJ to classify an occupation 'according to the least demanding function.'" *Carmickle*, 533 F.3d at 1166 (citing *Valencia*, 751 F.2d at 1086). As the plaintiff points out, the VE in this case actually acknowledged the discrepancy between the *DOT*'s "warehouse supervisor" position and the plaintiff's description of his past work when he commented that a warehouse supervisor who is also expected to work as part of his required duties is performing "at least medium work, like a warehouse worker would be," and commented that "I gathered from [plaintiff's] testimony that he also was working." AR at 54. Nevertheless, the VE ignored the fact that plaintiff's past job involved at least four hours of manual labor per day, and classified plaintiff's position as a purely supervisory position. Under *Carmickle* and *Valencia*, this was an error. The ALJ's reliance on the VE's testimony to conclude that plaintiff could perform his past relevant work as it is typically performed was not supported by substantial evidence.

Because the parties agree that the ALJ also erred in analyzing the job of preschool attendant, the only other job the ALJ identified at step four, and the ALJ failed to make any reviewable findings at step five, the ALJ's decision must be reversed.[3] Following remand, the ALJ shall solicit testimony from a VE, if necessary, and identify plaintiff's past relevant work and the applicable *DOT* job title or titles his work fits under. If the VE's testimony appears to conflict with the *DOT*, the ALJ must "obtain a reasonable explanation for the apparent conflict," and explain in the decision how he or she resolved the conflict. SSR 00-4p, at *4.

---

[3] The Commissioner concedes that the ALJ erred by finding that plaintiff could perform the job of preschool attendant as it is actually performed in the national economy. *See* Dkt. 19 at 14. As explained by the plaintiff, the job requires frequent rather than occasional stooping, and the ALJ provided no explanation for his deviation from the *DOT*. *See* Dkt. 16 at 5-8.

REPORT AND RECOMMENDATION - 12

B.     The ALJ Erred in Evaluating Dr. James' Opinions

Jennifer James, M.D., treated plaintiff for back pain in connection with his L&I claim following an industrial injury in November of 2006. AR at 16. The treatment records from Dr. James total three pages. The first page is a February 27, 2008 report regarding plaintiff's symptoms and limitations. AR at 314. The second and third pages are Dr. James' Physician's Estimate of Current Physical Capacities dated July 30, 2007. AR at 315-16.

The ALJ afforded "substantial weight" to Dr. James' opinions. Specifically, the ALJ noted that Dr. James' February 2008 report provided that plaintiff was encouraged to return to light duty with restrictions of no lifting more than 20 pounds, and to avoid bending and stooping. AR at 16 (citing AR at 314). The ALJ also noted that in the "more in-depth assessment of physical capacities [from July 2007], Dr. James noted that the claimant could sit, stand, and walk for 30 minutes each at a time for eight hours a day. In addition, he should limit bending, squatting, kneeling and crawling to occasionally, and he could lift 30 pounds occasionally and 20 pounds frequently and carry 20 pounds occasionally and 10 pounds frequently." AR at 16 (citing AR at 315). The ALJ concluded that Dr. James' assessment "is generally consistent with objective findings in the record which demonstrate that the claimant's impairments have not precluded light work activity." AR at 16. Finally, the ALJ noted "inconsistencies with regard to the limitations on the first page and those on the second," but found that "[b]ased upon the record as a whole, those on the first page have been accorded more weight." AR at 16.

Plaintiff contends that the ALJ erred in evaluating Dr. James' opinion because although the ALJ afforded more weight to Dr. James' opinion from February 2008 that plaintiff could return to light duty if he refrained from lifting more than 20 pounds and "avoid[ed] bending, stooping," AR at 314, the ALJ nevertheless found that plaintiff could stoop, crawl, and kneel

REPORT AND RECOMMENDATION - 13

1  frequently or occasionally when she concluded that plaintiff could perform the jobs of

2  warehouse supervisor and preschool attendant.  Dkt. 16 at 15.  Plaintiff contends that Dr.

3  James' opinion that plaintiff should avoid bending or stooping altogether directly conflicts with

4  the *DOT* occupations identified by the ALJ, which both require occasional or frequent

5  stooping, kneeling, or crouching.  *Id.* (citing *DOT* Nos. 222.137-034 (Warehouse Supervisor)

6  and 359.667-108 (Preschool Attendant)).  Moreover, plaintiff contends that the ALJ erred by

7  rejecting Dr. James' "more in-depth" opinions from July 2007 in favor of her less precise

8  findings from February 2008 without an explanation.  *Id*. at 15-16.

9        The Commissioner responds that the ALJ properly afforded more weight to Dr. James'

10  more recent opinion in determining plaintiff's RFC.  *See* Dkt. 19 at 9-10 (citing *Osenbrock v.*

11  *Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2000) (providing that the ALJ properly relied on a treating

12  physician's most recent medical report, rather than earlier reports indicating greater severity,

13  because "a treating physician's most recent medical reports are highly probative.")).  The

14  Commissioner further argues that "[p]laintiff was considered to have reached maximum

15  medical improvement in December 2007, which was after Dr. James wrote her July 2008

16  opinion.  Thus, substantial evidence supported the ALJ's decision to accord more weight to the

17  more recent opinion of February 2008, which was properly based on the record as a whole."

18  *Id.* at 10.

19        The Court agrees with the plaintiff that the ALJ erred by failing to address the conflict

20  between Dr. James' February 2008 opinion that plaintiff should avoid stooping or bending

21  altogether, and the ALJ's RFC assessment providing that plaintiff could occasionally stoop,

22  crouch, crawl and kneel.  As these movements were also required by the occupations identified

23  by the ALJ at step four, this error was not harmless.  Because this case is being remanded, it is

24

unnecessary for the Court to decide whether the ALJ also erred by affording more weight to Dr. James' more recent but less "in-depth" medical opinion from February 2008.

Following remand, the ALJ is directed to reconsider the medical evidence in this case, and more thoroughly explain the weight afforded to Dr. James' opinions. The ALJ shall also explain any conflicts between Dr. James' opinions and the ALJ's RFC assessment.

    C.    <u>On Remand, the ALJ Should Consider Dr. Yang's Opinions Submitted to the Appeals Council</u>

After the ALJ issued her written decision in April 2010, plaintiff submitted a medical report to the Appeals Council from Nelson Yang, M.D., a resident in the University of Washington Department of Medicine who has treated plaintiff several times from July through November 2009. AR at 570-73, 596, 626-28, 639-41. Specifically, Dr. Yang saw plaintiff on June 4, 2010, and signed a declaration dated June 23, 2010. AR at 668-74. In his declaration, Dr. Yang opined that plaintiff should not be in a position for more than one hour at a time without at least a ten to fifteen-minute break, and that even if sitting, he would need to stretch, walk, or lie down. AR at 670. Moreover, Dr. Yang noted that plaintiff had just started taking morphine for his pain, and that "[w]e are constantly working on changing his narcotic regimen to provide him with non-sedating pain control." AR at 671. The Appeals Council considered the new evidence, but nevertheless declined plaintiff's request for review. AR at 1-6; 668-74.

On June 14, 2012, the Ninth Circuit issued *Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157 (9th Cir. 2012). The *Brewes* court held that "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Id*. at 1159-60.

REPORT AND RECOMMENDATION - 15

1   On July 5, 2012, this Court ordered the parties to meet and confer about the impact of
2   *Brewes* on plaintiff's claims.  Dkt. 21.  The parties failed to reach an agreement, and submitted
3   supplemental briefs on July 16, 2012.  Dkt. 22; Dkt. 23.

4   Plaintiff contends that "Dr. Yang's June 2010 opinions submitted to the Appeals
5   Council confirm that substantial evidence does not support the ALJ's [RFC] assessment and
6   related adverse credibility finding."  Dkt. 16 at 20.  The Commissioner responds that "[t]he
7   Appeals Council's reasoning that the new evidence contained no objective clinical findings
8   that supported additional functional limitations than those established by the ALJ was proper."
9   Dkt. 22 at 5.

10  In light of the ALJ's errors discussed above, the Court is unable to assess whether
11  substantial evidence would have supported the ALJ's decision despite Dr. Yang's June 2010
12  opinions.  As this case is already being remanded for further evaluation of the medical
13  evidence, the ALJ is directed to consider the new evidence submitted to the Appeals Council,
14  including Dr. Yang's opinions, following remand.

15  D.   On Remand, the ALJ Shall Reevaluate Plaintiff's Credibility and the Lay Witness Testimony

16  The ALJ's assessment of plaintiff's credibility, as well as the ALJ's evaluation of the
17  lay witness testimony of plaintiff's ex-wife Deborah Lee, was likely affected by the errors in
18  the ALJ's conclusions regarding the medical evidence discussed above.  Accordingly, the ALJ
19  shall reevaluate the plaintiff's credibility as well as the lay witness testimony of Ms. Lee.

20  ///
21  ///
22  ///
23
24

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.   A proposed order accompanies this Report and Recommendation.

DATED this 26th day of July, 2012.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge